A. L. SALVIDGE, Administrator, Appellant, v. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellee.

**INSURANCE:** Cancellation—Failure to Pay Loan. The court will uphold, in a policy of life insurance, a reasonable and nonoppressive agreement between an insured and his insurer, to the effect that

the insurer may cancel the policy whenever the insured fails to pay his matured loan on the policy, or to pay the matured interest on such loan.

INSURANCE:   Assignment of Policy—Signature of Spouse.   An as-
2   signment of a policy of life insurance to the insurer (in accord-
ance with the terms of the policy), to secure a loan made to the
insured by the insurer, ·is valid without the signature of the
spouse of the policyholder.   Section 2906, Code, 1897, does not
apply to such an instrument.

INSURANCE:   Estoppel—Insufficient Showing.   An insurer is not
3   estopped to plead a defense to the policy because of the fact that,
·upon presentation by an unauthorized party of proof of death, the
agent informed the parties that, if proofs were prepared by the
proper party, he would forward same to the headquarters of the
insurer; ·and that thereupon, proper proofs were prepared and so
forwarded.

*Appeal from Franklin District Court.*—R. M. WRIGHT, Judge.

FEBRUARY 6, 1923.

ACTION at law, to recover upon a policy of life insurance. Trial to the court without a jury. Judgment for defendant, and plaintiff appeals.—*Affirmed.*

*John M. Hemingway,* for appellant.

*Deacon, Good, Sargent & Spangler* and *Clock & Saley,* for appellee.

WEAVER, J.—On June 19, 1900, the defendant issued to Gorham T. McCrillis its policy of life insurance, by which it undertook to pay to said McCrillis, his executors or assigns, the

1. INSURANCE: cancellation: failure to pay loan.

sum of $1,000, on satisfactory proof of the death of said insured during the continuance of said policy, upon the following condition: The annual premiums of $48.61 shall be paid in advance on the delivery of the policy and thereafter every year during the continuance of the contract, or until the premiums for ten full years shall have been duly paid to the company. It was further provided, among other things, that the first distributive share of

surplus should be apportioned to this policy at the expiration of 20 years from its date, and subsequent distributions should be made annually in cash during the continuance of the policy. The petition alleges that the said Gorham T. McCrillis did pay said premiums, as required by the contract, until the same were fully and completely discharged; that thereafter, on February 26, 1921, said insured person died; that plaintiff is the duly appointed administrator of his estate, and as such has furnished the company with due proofs of the death of said insured person.

Answering the petition, the defendant admits the issuance of the policy, but denies any liability thereon to the administrator of the insured, such denial of liability being predicated upon the following alleged facts: The policy contains a provision that, after the contract shall have been in force three full years, the company will, upon assignment of such policy as security, lend to the insured a sum of money not to exceed a specified limit, on condition that the annual premiums shall be fully paid to the end of the policy year in which such loan falls due, and that, in any settlement of the policy, all outstanding indebtedness to the company must be paid. It is further alleged that, pursuant to said terms of the contract, the company did, on November 26, 1918, lend to the insured the sum of $514, in consideration of which said McCrillis made and delivered to the company his promissory note for $514, payable June 19, 1919, and assigned and deposited the policy with it as collateral security; that, by the terms of said note and contract, in case of failure to pay said indebtedness when due, or in the event of nonpayment of the interest required by the company for its renewal or extension, the company might, without further notice or demand, cancel the policy as of the date of the default, and apply the surrender value of the policy to the repayment of the loan, and pay the remainder, if any, to the parties entitled thereto. It is further alleged that payment of said loan was extended to and became due December 19, 1920, but that, the insured having failed to make such payment of principal or interest, the company, acting upon the terms of the contract, did, on January 20, 1921, cancel said policy, as of December 20, 1920; that the surrender value of said policy was then $528, of which sum $514 was applied to the repayment of the loan, and

the remainder, of $14, has been tendered to the plaintiff, and is now brought into court for plaintiff's use.

Replying to said answer, plaintiff denies that any valid assignment of the policy to the company was ever made; alleges that defendant never notified the insured of the forfeiture or cancellation of the policy, and never paid or offered to pay the excess of the surrender value of the policy until after the death of the insured. Further replying, it is alleged that, upon being notified of the death of the insured, the company requested or demanded of the widow of said McCrillis and the plaintiff, administrator of his estate, that they cause formal proofs of his death to be supplied; that, in compliance with said demand, the administrator did incur trouble and expense in preparing and furnishing such proofs; that not until this was done did the company set up any claim of the forfeiture of the policy; and that, because thereof, said defense was waived, and defendant is barred and estopped to plead or rely thereon.

The issues thus joined were tried to the court, which found for the defendant, and judgment for costs was entered against the plaintiff.

I.   There is but little conflict of evidence relating to the matter in controversy. The real dispute between the parties relates rather to the legal effect of admitted facts. It should be said at the outset of this discussion that the policy sued upon provides, in substance, that it shall be treated as a New York contract. In our view, this provision and its validity are not of vital importance, and the judgment appealed from is readily sustainable on general principles of the common law applicable to insurance contracts. There is nothing in the law of this state which forbids or invalidates an agreement in an insurance policy by which the insurer may make a loan of money to its policyholder on the security afforded by an assignment or deposit of such policy. The right to make such loan upon such security implies the right to subject that security to the payment of the loan, in case of default in payment, and any reasonable agreement or condition to accomplish that end is and should be enforcible in any court of competent jurisdiction. In saying this, it is not necessary to hold that the court will uphold and enforce inequitable or oppressive forfeitures or penalties; but, in the

absence of any showing of that character, there can be no reason for denying to the parties the right to fix the terms of the agreement between them.

Turning now to the case at bar, it appears that the so-called forfeiture or cancellation of the policy is an arrangement or settlement by which the insured is paid the full surrender value of his insurance, so much thereof as is necessary being applied to payment of the loan of which he has had the benefit, and the remainder or surplus, if any, being paid him in money. Had McCrillis not been indebted to the company, and had he, on the date named, concluded for any reason not to carry his insurance any longer, and applied to the company to surrender his policy, he would have been entitled to receive neither more nor less than he did, in legal effect, receive by the cancellation of his policy. In a business sense, it may have been unwise for him to permit himself to be so defaulted, but there was nothing in the agreement contrary to sound principles of public policy. Counsel seeks to bring the case within scope of the rule by which a mortgagor's right of redemption cannot be effectually waived by any agreement or stipulation at the time the instrument is made, even though embodied in the writing itself; but the authorities referred to are not in point, either in fact or in principle. It appears to have been the custom and practice of the defendant to renew or extend loans to policyholders for stated periods, upon payment of premiums and interest due. If a default was made on the due date, 31 days' grace was allowed, and if, at the end of that period, payment had not been made, a cancellation of the policy was entered, after which opportunity was still offered the policyholder for reinstatement, upon payment of the interest due, and upon the furnishing of a physician's certificate of health. The testimony shows without dispute that McCrillis did not make the payment of interest due December 19, 1920, which payment was a contract condition of his right to an extension of the loan. On or near the last of the 31 days of grace, he sent defendant his personal check on a local bank for the sum due; but the check was dishonored, for want of funds to meet it. Following its usual methods in such business, and the terms of the contract embodied in the policy and loan agreement, the company canceled the policy, making proper

entry thereof upon its record.   Notice of this action was at once
given the insured, together with an urgent invitation to rein-
state his insurance by complying with the usual condition of‹
payment of the defaulted interest and of the furnishing of a
health certificate.   This was not done; and while the correspond-
ence between the insurer and insured upon this subject was still
in progress, McCrillis committed suicide.   The fact of suicide
is not pleaded or relied upon as a defense, and is material only
as a circumstance explanatory in some degree of the general
situation out of which this litigation has arisen.   It appears,
therefore, that McCrillis was accorded the full benefit of his
contract, and that no snap judgment was taken or undue ad-
vantage exercised over him, on the part of the company.   He
must have known that, if he paid the comparatively trifling sum
of $12.85 interest, his loan would be extended another six months,
and that failure to do so was tantamount to an election on his
part to surrender his policy and to accept its surrender value
in discharge of the company's obligation thereunder.   There is
no allegation or proof that he was not then of sound mind, or
was incapable of understanding the legal effect of his default.
We can conceive of no sound theory upon which the defendant
can be deprived of its right to rely and act upon the terms of
its contract according to the clear import of the language em-
ployed.

Concluding this branch of the discussion, we desire to em-
phasize by repetition the proposition that the defense presented
by the company is not a plea of forfeiture of the policy sued
upon.   It is, in effect, a plea of performance of the contract be-
tween the parties.

II.   This conclusion or result is not to be avoided by the
plaintiff's plea that the life insurance was exempt from the
claims of creditors, and that, to make its assignment valid, it
2. INSURANCE: should have been executed by both the insured
assignment of and his wife.   Possibly, though we do not so
policy: signa-
ture of spouse. decide, the statute upon which appellant relies,
Code Section 2906, would be applicable if the assignment had
been made to secure a creditor other than the insurer; but in
this case, the right to thus deal between the insurer and insured
is reserved in the very instrument by which the insurance is

created, and the interest which the wife acquires by such policy is necessarily subject to its terms. For the purposes of this case, it is sufficient to say that such an assignment, made pursuant to the terms of the contract, is not an "incumbrance of personal property which may be held exempt from execution by the head of a family," and the signature of the wife thereto is not necessary to its validity.

III.   Nor does the record sustain the plaintiff's plea of waiver and estoppel against the defendant. After the death of McCrillis, the administrator caused the widow' to make out proofs of said death and send them to the agent at Des Moines. Upon notification that the proofs should be made by the administrator, and that, upon receipt of such proofs by the agent, they would be forwarded to the home office at New York for its consideration, such amended proof was made, and the company responded thereto to the effect that the policy had been canceled, as aforesaid, in the lifetime of the insured. The requirement by the company that the proofs be made by the administrator instead of by the widow was only a reasonable requirement for the safety of the insurer. The refusal of a demand made upon it by an unauthorized party ought not to be held a waiver or estoppel of its right to plead any defense which might be raised to a demand or suit by one clothed with the legal right to make it. Again we remark that the reason for the rule established by the precedents cited by appellant, to the effect that a plea of forfeiture of a policy is waived by failure to make a timely claim, has its origin in the reluctance of the courts to enforce forfeitures, and does not apply with equal force where the issue involves no more than the substantial performance of a contract obligation.

3. INSURANCE: estoppel: insufficient showing.

This action is at law, and in so far as it turns upon questions of fact, the findings of the trial court have the force and effect of a verdict by a jury. The issues seem to have been fairly tried, and the record discloses no reversible error. The judgment of the district court is, therefore,—*Affirmed.*

PRESTON, C. J., STEVENS and DE GRAFF, JJ., concur.